# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TANVEER HANS, | Case No. 1:24-cv-01214-JLT-SAB |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS RECOMMENDING GRANTING DEFENDANT'S MOTION TO DISMISS |
| v. | |
| DEPT. OF STATE HOSPITALS, COALINGA, | (ECF No. 9) |
| Defendant. | **OBJECTIONS DUE WITHIN FOURTEEN DAYS** |

Plaintiff Tanveer Hans ("Plaintiff") brings this workplace discrimination case against Defendant Dept. of State Hospitals, Coalinga ("Defendant"). (ECF No. 1.) On December 10, 2024, Defendant moved to dismiss the complaint for lack of subject-matter jurisdiction and failure to state a claim upon which relief can be granted. (ECF No. 19.) The assigned District Judge referred the motion to the undersigned for the preparation of findings and recommendations on February 18, 2025. (ECF No. 13.) Plaintiff did not file an opposition, and the Court takes the matter as submitted. Having considered the moving papers, as well as the Court's file, the Court issues the following findings and recommendations recommending granting Defendant's motion to dismiss.

///

///

///

# I.

# BACKGROUND

Plaintiff is Tanveer Hans, a resident of Coalinga, California and is proceeding *pro se*. (ECF No. 1, p. 1.) Defendant is Department of State Hospitals, Coalinga, located in Coalinga, California. (Id. at p. 2.) Plaintiff invokes federal question subject-matter jurisdiction, citing that this case arises under Title VII of the Civil Rights Act of 1964. (Id.)

Plaintiff alleges that in July 2019, Defendant "negligently and intentionally failed to hire plaintiff for a permanent position . . . due to discrimination based on ancestry, but gave a false pretext of failing to hire due to plaintiff having a probationary license." (Id. at p. 3.)[1] Plaintiff continues that "at Coalinga State Hospital, there were multiple employees already working at the hospital with probationary licenses and have continued to be hired by the hospital since I have been interviewed in June 2019-2020. The probationary license was a pretext to not hire plaintiff based on his family of origin. Specifically, due to the hospital staff's relationship with his father, Baldev Hans, who had been unfairly targeted and is currently retired and has Worker's Compensation case pending against the Department of State Hospitals, Coalinga." (Id.)

Plaintiff states that he received a charge of discrimination letter from the Equal Employment and Opportunity Center. (Id.) Plaintiff alleges that he "is a member of a protected class based on his ancestry. Plaintiff have been treated disparately due to his ancestry. Plaintiff . . . was performing competently in the position he held as a Psychiatric Technician as evidenced by multiple good and passing evaluations." (Id. at pp. 3-4.) Plaintiff was not hired for the full-time position of Psychiatric Technician. (Id. at p. 4.) Again, Plaintiff notes that Defendant hired other people with probationary licenses and that Plaintiff "was targeted and treated differently due to the status and relationship of his father with the hospital administration." (Id.) Plaintiff alleges that Virginia Conningham, Nursing Coordinator, and Daniel Meak, Program Director, were involved with disciplining Plaintiff's father as well as involved with Plaintiff's employment hiring. (Id.) Plaintiff states that he was repeatedly passed over for a promotion due to his

---

[1] At times in the complaint, Plaintiff includes discussion of legal standards and/or makes legal arguments. The Court endeavors to recite only the factual background in this section.

2

ancestry. (Id.)

Plaintiff alleges that Defendant stated that it was its policy to hire only two people with probationary licenses, but according to Plaintiff, no such policy exists. (Id.) Defendant had many positions available and still does "but did not allow Plaintiff to fulfill his probationary requirements while working for Defendant." (Id. at p. 5.)

Plaintiff alleges that not being hired caused Plaintiff injury "because Plaintiff lost job opportunity, income and suffered further emotional distress." (Id.) For relief, Plaintiff seeks 1.4 million dollars "plus punitive damages." (Id.) Plaintiff also seek additional monetary compensation for back pay, emotional distress, pain and suffering, and harassment. (Id. at p. 6.)

Plaintiff then attached to his complaint a California charge of discrimination form, a workplace evaluation form, a record labeled "State Eligibility List," and a printout of an email chain Plaintiff labeled "No Policy on Probationary License." (Id. at pp. 8-16.)

## II.

## LEGAL STANDARDS

When a defendant moves to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), the plaintiff bears the burden of proving that the court has jurisdiction to decide the claim. Thornhill Publ'n Co. v. Gen. Tel. & Elecs. Corp., 594 F.2d 730, 733 (9th Cir. 1979). Federal courts can only adjudicate cases which the Constitution or Congress authorize them to adjudicate: cases involving diversity of citizenship, or those cases involving a federal question, or where the United States is a party. See, e.g., Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994).

A Rule 12(b)(1) motion can be either "facial" or "factual." Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004). Where an attack on jurisdiction is a "facial" attack on the allegations of the complaint, the factual allegations of the complaint are taken as true and the non-moving party is entitled to have those facts construed in the light most favorable to him or her. Federation of African Am. Contractors v. City of Oakland, 96 F.3d 1204, 1207 (9th Cir. 1996).

In a "factual attack," the moving party questions the veracity of the plaintiff's allegations

3

1   that "would otherwise invoke federal jurisdiction." Safe Air for Everyone, 373 F.3d at 1039. The
2   plaintiff's allegations are questioned by "introducing evidence outside the pleadings." Leite v.
3   Crane Co., 749 F.3d 1117, 1121 (9th Cir. 2014). "When the defendant raises a factual attack, the
4   plaintiff must support her jurisdictional allegations with 'competent proof,' under the same
5   evidentiary standard that governs in the summary judgment context." Id., quoting Hertz Corp. v.
6   Friend, 559 U.S. 77, 96-97 (2010). While the plaintiff typically has the burden of proof to
7   establish subject matter jurisdiction, "if the existence of jurisdiction turns on disputed factual
8   issues, the district court may resolve those factual disputes itself." Id. at 1121-22, citing Safe Air
9   for Everyone, 373 F.3d at 1039-40.

10   Federal Rule of Civil Procedure 8(a)(2) requires a complaint to include "a short and plain
11   statement of the claim showing that the pleader is entitled to relief." A complaint that fails to
12   meet this standard may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). To
13   overcome a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter,
14   accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556
15   U.S. 662, 678 (2009), quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim
16   has facial plausibility when the plaintiff pleads factual content that allows the court to draw the
17   reasonable inference that the defendant is liable for the misconduct alleged." Id. "Plausibility
18   requires pleading facts, as opposed to conclusory allegations or the formulaic recitation of the
19   elements of a cause of action, and must rise above the mere conceivability or possibility of
20   unlawful conduct that entitles the pleader to relief." Somers v. Apple, Inc., 729 F.3d 953, 959-60
21   (9th Cir. 2013) (cleaned up). "Factual allegations must be enough to raise a right to relief above
22   the speculative level." Twombly, 550 U.S. at 555.

23   In ruling on a Rule 12(b)(6) motion, the court "accept[s] all factual allegations in the
24   complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving
25   party." Rowe v. Educ. Credit Mgmt. Corp., 559 F.3d 1028, 1029-30 (9th Cir. 2009) (citation
26   omitted). But "allegations that are merely conclusory, unwarranted deductions of fact, or
27   unreasonable inferences" need not be accepted. In re Gilead Scis. Sec. Litig., 536 F.3d 1049,
28   1055 (9th Cir. 2008) (citation omitted). "Dismissal is appropriate when the complaint lacks a

1  cognizable legal theory or sufficient factual allegations to support a cognizable legal theory."
2  Saloojas, Inc. v. Aetna Health of Cal., Inc., 80 F.4th 1011, 1014 (9th Cir. 2023) (cleaned up).

**III.**

**DISCUSSION AND ANALYSIS**

5  Defendant argues that all of Plaintiff's claims are barred for three reasons. First, Defendant contends that Plaintiff has already litigated this matter in the state courts to a final judgment; therefore, the Rooker-Feldman doctrine deprives this Court of subject-matter jurisdiction. (ECF No. 9, pp. 11-12.) Second, should the Court disagree, Defendant argues that Plaintiff's claims are barred by res judicata and/or collateral estoppel. (Id. at pp. 12-16.) Finally, Defendant observes that Plaintiff's claim is untimely and should be dismissed for that reason as well. (Id. at pp. 16-17.) As stated above, Plaintiff did not file an opposition. The Court disagrees with Defendant that the Rooker-Feldman doctrine applies but agrees that res judicata does apply in this case. Furthermore, Plaintiff's claims are untimely.

**A.   Rooker-Feldman**

As explained by the Supreme Court of the United States, "[f]ederal district courts . . . are empowered to exercise original, not appellate, jurisdiction." Exxon Mobile Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 283 (2005). In other words, the federal district courts are without subject-matter jurisdiction to "review and reverse unfavorable state-court judgments." Id. "The United States Supreme Court is the only federal court with jurisdiction to hear such an appeal." Noel v. Hall, 341 F.3d 1148, 1154 (9th Cir. 2003). This has come to be known as the Rooker-Feldman doctrine. Exxon Mobile, 544 U.S. at 283-84. "The purpose of the doctrine is to protect state judgments from collateral federal attack." Doe & Assocs. L. Offs. v. Napolitano, 252 F.3d 1026, 1030 (9th Cir. 2001). In Exxon Mobile, the Supreme Court clarified that Rooker-Feldman applies only to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Id. at 284.

While citing correct legal standards and authority, Defendant has missed the nuance of the Court's clarification in Exxon Mobile. The Supreme Court was explicit that the Rooker-Feldman

5

doctrine applies only to situations where a state-court loser complains of *injuries caused by state-court judgments* rendered before the district court proceedings commenced. Id. For example, the doctrine would apply where a litigant brought suit in federal court seeking to have a state-court judgment declared null and void, as in Rooker. Id. at 283. In this scenario, the litigant is quite literally seeking an appeal of the state court judgment in federal court, what courts have labeled a de facto appeal. Id.

In Feldman, the plaintiffs sought relief in the district court following an adverse decision in the state court below. Id. at 285. As relevant here, to the extent the plaintiffs sought review of the adverse judicial determination, the Supreme Court concluded that the district court was without jurisdiction. Id. Yet, the plaintiffs' claims also challenged the constitutionality of the state bar rules for attorney admissions, which the Court noted did not necessarily require review of the state court judgment. Id. at 285-86. That said, in the case before it, the Court observed that the constitutionality challenge was "inextricably intertwined" with the state court decisions and judgments, and for that reason, these claims could not be pursued. Id. at 286. Thus, following Feldman, where a litigant brings a de facto appeal, a court will generally conduct a review of the litigant's claims to see if any can survive the inextricably intertwined inquiry. The Ninth Circuit has observed that cases that could proceed past the "inextricably intertwined" test of Feldman would primarily be in "the category of cases in which the local court has acted in both legislative and a judicial capacity—and in which the loser in state court later challenges in federal court both the rule and its application." Noel v. Hall, 341 F.3d 1148, 1158 (9th Cir. 2003).

Here, Plaintiff has not asked the Court for relief from a state court judgment, nor has he alleged injuries caused by such a judgment. Instead, Plaintiff has brought a Title VII claim of employment discrimination claim, which is not a de facto appeal. Thus, there is no occasion to delve into the inextricably intertwined test. While Plaintiff's claim might have been fully adjudicated in state court (which implicates the issue of preclusion), this Court is not without subject-matter jurisdiction. See Exxon Mobile, 544 U.S. at 284; see generally, Allison B. Jones, The Rooker-Feldman Doctrine: What Does It Mean to Be Inextricably Intertwined?, 56 DUKE L. J. 643 (2006).

1    The Court will recommend denying Defendant's motion to dismiss as to its argument that
2 Rooker-Feldman deprives the Court of jurisdiction.

3    **B.    Res Judicata**

4    Defendant argues that because Plaintiff's claim has already been adjudicated in the state
5 court, Plaintiff is precluded from raising his claim here. On this, the Court agrees with Defendant.

6    "'Res judicata' describes the preclusive effect of a final judgment on the merits. Res
7 judicata, or claim preclusion, prevents relitigation of the same cause of action in a second suit
8 between the same parties or parties in privity with them." Mycogen Corp. v. Monsanto Co., 28
9 Cal. 4th 888, 896, 51 P.3d 297 (Cal. 2002). "Under the doctrine of res judicata, . . . a judgment for
10 the defendant serves as a bar to further litigation of the same cause of action." Id. at 896-97.

11    Regarding res judicata, "all claims based on the same cause of action must be decided in a
12 single suit; if not brought initially, they may not be raised at a later date." Id. at 897. In other
13 words, "[r]es judicata precludes piecemeal litigation by splitting a single cause of action or
14 relitigation of the same cause of action on a different legal theory or for different relief." Id.
15 (internal quotation omitted).

16    **1.    Same Cause of Action: Primary Rights Theory**

17    In arguing for res judicata generally—and especially that Plaintiff raised the same claim
18 and/or cause of action in the state court proceeding—Defendant raises both the federal and
19 California version of determining whether this Court should give preclusive effect to a judgment.
20 While the Court appreciates that the overlay of res judicata principles between state and federal
21 tribunals can be complex at times, here state law is appropriate. Accordingly, the Court will focus
22 on whether the judgment in California state court should be given preclusive effect under
23 California's primary rights theory.

24    To begin, the Ninth Circuit has observed, the test involving "the same transaction nucleus
25 of facts" is "used to analyze the preclusive effect of prior *federal* court judgments." Brodheim v.
26 Cry, 584 F.3d 1262, 1268 (9th Cir. 2009) (emphasis in original). In contrast, "[u]nder 28 U.S.C. §
27 1738, federal courts are required to give state court judgments the preclusive effects they would be
28 given by another court of that state." Migra v. Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75,

84 (1984); Maldonado v. Harris, 370 F.3d 945, 951 (9th Cir. 2004).

California law holds a final judgment of a state court "precludes further proceedings if they are based on the same cause of action." Maldonado, 370 F.3d at 952. Unlike the federal courts, which apply a "transactional nucleus of facts" test, "California courts employ the 'primary rights' theory to determine what constitutes the same cause of action for claim preclusion purposes." Id. Under this theory, "a cause of action is (1) a primary right possessed by the plaintiff, (2) a corresponding primary duty devolving upon the defendant, and (3) a harm done by the defendant which consists in a breach of such primary right and duty." City of Martinez v. Texaco Trading & Transp., Inc., 353 F.3d 758, 762 (9th Cir. 2003), citing Citizens for Open Access to Sand and Tide, Inc. v. Seadrift Ass'n, 60 Cal. App. 4th 1053, 1065, 71 Cal. Rptr. 2d 77 (1998). "[I]f two actions involve the same injury to the plaintiff and the same wrong by the defendant, then the same primary right is at stake even if in the second suit the plaintiff pleads different theories of recovery, seeks different forms of relief and/or adds new facts supporting recovery." Eichman v. Fotomat Corp., 147 Cal. App. 3d 1170, 1174, 197 Cal. Rptr. 612 (Cal. Ct. App. 1983); see San Diego Police Officers' Ass'n v. San Diego City Employees' Retirement System, 568 F.3d 725, 734 (9th Cir. 2009). "The critical focus of primary rights analysis 'is the harm suffered.'" Brodheim, 584 F.3d at 1268, quoting San Diego Police Officers Ass'n, 568 F.3d at 734; see also City of Martinez, 353 F.3d at 762.

Here, in the preceding state-court order, Superior Court quoted Plaintiff's allegations in his second amended complaint. In a section labeled "About Discrimination," Plaintiff stated:

> [Defendant] is selecting candidates with probationary license of their own choice and rejected me for having no grounds of rejection. This is intentionally done again and again. As per rule of law probationary license come under the minimum qualification[s] in the selection process. So [Defendant] is using illegal practice[s] in the process of selection. It means they are selecting candidates of their own choice which constitutes illegal practice[s] of hiring (done knowingly) i.e. (illegal favoritism) even after they know the policy of probationary license. This illegal practice of hiring or illegal favoritism done knowingly should be considered as discrimination.

(ECF No. 9-1, p. 66) (brackets in original).[2]  Further, the Court notes that in his second amended complaint, Plaintiff raised the same argument regarding Defendant having a policy of hiring only two people with probationary licenses.  (Id. at p. 61.)  Plaintiff also raised claims of negligence and retaliation in the same employment context.  (Id. at p. 62.)

In addition, attached to the second amended complaint, Plaintiff included his EEOC right to sue letter that is dated March 24, 2021.  (Id. at p. 54.)  Plaintiff also attached the related EEOC Charge of Discrimination (which is also included with Plaintiff's complaint in this proceeding, ECF No. 1, p. 9), wherein Plaintiff states that he was not hired in 2019 by Defendant because of his probationary license.  (ECF 9-1, p. 53.)[3]  Plaintiff goes on to state that "I believe this is pretextual to deny me employment. . . . No reason was given for the difference in treatment. . . . I believe I was not hired and retaliated against, in violation of Title VII of the Civil Rights Act of 1964, as amended."  (Id.)

The Court first finds that in both the state court proceeding and this case, Plaintiff alleges the same primary right—to wit, Plaintiff has the right to employment hiring free from discrimination (as required by Title VII).  Second, the Court finds that Plaintiff has alleged the same corresponding primary duty upon Defendant, namely that Defendant should not discriminate against Plaintiff in its hiring practices.  Third, the Court finds that Plaintiff alleges in both suits that Defendant has breached its duty by not hiring Plaintiff, which was purportedly done pretextually under the guise that Defendant did not hire Plaintiff because of his probationary license.  In other words, Plaintiff alleges the same harm occurred to him in both lawsuits.  The similarity between the two cases is only underscored by the fact that Plaintiff relies upon the same charge of

---

[2] The Court takes judicial notice of Plaintiff's complaint filed in Superior Court and notes that the Superior Court construed a letter as part of Plaintiff's second amended complaint.  Fed. R. Evid. 201(b); (ECF No. 9-1, pp. 20-62.)  Defendant has also requested that the Court take judicial notice of a disciplinary order from the California Board of Vocational Nursing and Psychiatric Technicians Department of Consumer Affairs Decision.  (ECF No. 9-1, pp. 4-18.)  While the Court does not find this order relevant to its recommendation, the Court nonetheless take notice of the order and accompanying filings.  Fed. R. Evid. 201(b)(2).  Courts routinely take judicial notice of undisputed matters of public record, Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001), including documents filed in federal or state courts.  Harris v. Cnty. of Orange, 682 F.3d 1126, 1132 (9th Cir. 2012).

[3] Because the basis of Plaintiff's claim in this Court (and Superior Court) relies on Plaintiff's EEOC Charge of Discrimination and EEOC right to sue letter, the Court incorporates them into the complaint.  (ECF No. 1, p. 9; ECF No. 9-1, p. 54); United States v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003); Lee, 250 F.3d at 688.

9

discrimination for both matters.

Based on the foregoing, the Court finds that the two suits involve the same claim or cause of action.

### 2. Final Judgment

Included with Defendant's motion is a tentative opinion from the California Superior Court, Fresno County, a June 27, 2023 judgment sustaining Defendant's demurrer without leave to amend, and an opinion from the California Court of Appeal affirming the June 27, 2023 judgment. (ECF No. 9, pp. 64-80.)[4] In the Superior Court's judgment, it noted that its tentative ruling had been adopted. (Id. at p. 69.) The judgment explicitly sustained the demurrer without leave to amend and entered judgment in favor of Defendant and against Plaintiff. (Id. at p. 70.) The Court finds that the June 27, 2023 judgment is a final judgment reached on the merits. Crowley v. Modern Faucet Mfg. Co., 44 Cal. 2d 321, 322 (Cal. 1955); see Slater v. Blackwood, 15 Cal. 3d 791, 795 (Cal. 1975) ("A valid final judgment on the merits in favor of a defendant serves as a complete bar to further litigation on the same cause of action."); Migra, 465 U.S. at 80.

### 3. Same Parties or Their Privities

In both suits, Plaintiff has sued the California Department of State Hospitals. As such, a discussion of privity is unnecessary.

In sum, the state court proceeding reached a final judgment on the merits, which involved the same claim or cause of action as the later lawsuit here. Moreover, both lawsuits involve the same parties. Given that "a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered," Migra, 465 U.S. at 80, the Court concludes that res judicata applies and bars Plaintiff's litigation of his claim here.

The Court will recommend granting Defendant's motion to dismiss because res judicata applies.

---

[4] The Court takes judicial notice of the tentative opinion from the California Superior Court, Fresno County (ECF No. 9-1, pp. 64-67), a June 27, 2023 judgment sustaining Defendant's demurrer without leave to amend (Id. at pp. 69-70), and an opinion from the California Court of Appeal affirming the June 27, 2023 judgment (Id. at pp. 72-80). Fed. R. Evid. 201(b); Lee, 250 F.3d at 689; Harris, 682 F.3d at 1132.

**C.     Timeliness**

Defendant also argues that Plaintiff's complaint should be dismiss as it is untimely. Though the Court has concluded that res judicata bars Plaintiff's complaint, the Court agrees with Defendant and will recommend dismissal on this basis in the alternative.

An action brought under Title VII must be filed within 90 days of receipt of a right to sue letter from the EEOC or appropriate state agency. 42 U.S.C. § 2000e–5(f)(1). "The requirement for filing a Title VII civil action within 90 days from the date EEOC dismisses a claim constitutes a statute of limitations." Scholar v. Pacific Bell, 963 F.2d 264, 766-67 (9th Cir. 1992), citing Edwards v. Occidental Chem. Corp., 892 F.2d 1442, 1445 (9th Cir.1990). "If [a] claimant fails to file within 90-day period, the action is barred accordingly." Id.

Plaintiff filed his EEOC Charge on March 21, 2021, and was issued his EEOC Dismissal and Notice of Rights on March 24, 2021. However, Plaintiff attached his Dismissal Notice of Rights to his state-court complaint filed on May 21, 2021, which establishes that he had received it at least as of that date. Given that this is a motion to dismiss, the Court will give Plaintiff the benefit of the later date. Thus, the Court finds that Plaintiff at the latest received notice of his right to sue letter by May 21, 2021. Ninety days following that date would August 19, 2021. Plaintiff filed this lawsuit on October 8, 2024, well over the 90-day period to file a claim in the courts. Therefore, Plaintiff's lawsuit here is untimely and is barred.

Accordingly, in the alternative, the Court will recommend dismissing this action as untimely.

**D.     Leave to Amend**

Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend shall be freely given when justice so requires. Fed. R. Civ. P. 15(a)(2). "In the absence of . . . undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should . . . be 'freely given.'" Foman v. Davis, 371 U.S. 178, 182 (1962), quoting Fed. R. Civ. P. 15(a). In other words, "[a]bsent prejudice, or a strong showing of any of the remaining Foman factors, there exists a

11

1 presumption under Rule 15(a) in favor of granting leave to amend." Eminence Capital, LLC v.
2 Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003).  The decision of whether to grant leave to
3 amend is within the discretion of the district court.  Leadsinger, Inc. v. BMG Music Pub., 512
4 F.3d 522, 532 (9th Cir. 2008).

5      The Court finds at least two reasons to recommend dismissing this matter without leave to
6 amend.  First, the Court notes that Plaintiff did not file an opposition or anything on the docket
7 following Defendant filing its motion to dismiss in December 2024.  Thus, Plaintiff has
8 demonstrated at least some level of dilatoriness in prosecuting his case.  Second, giving leave to
9 amend would be futile in this matter.  No amendment could cure either of the Court's findings
10 that Plaintiff's claim is barred either by res judicata or the applicable statute of limitations.

11      Thus, the Court will recommend dismissing this matter without leave to amend.

## V.

## CONCLUSION AND RECOMMENDATION

14      Based on the foregoing, IT IS HEREBY RECOMMENDED that Defendant's motion to
15 dismiss (ECF No. 9) be GRANTED as follows:

16      1.    Denying Defendant's motion to dismiss as to its argument that the Rooker-Feldman
17          doctrine deprives the District Court of subject-matter jurisdiction;

18      2.    Granting Defendant's motion to dismiss as to its argument that res judicata bars
19          Plaintiff's claims in this Court;

20      3.    In the alternative, granting Defendant's motion to dismiss because Plaintiff's claims
21          are untimely; and

22      4.    DISMISSING the complaint WITHOUT LEAVE TO AMEND.

23      These findings and recommendations are submitted to the district judge assigned to this
24 action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304.  Within **fourteen**
25 **(14) days** of service of this recommendation, any party may file written objections to these
26 findings and recommendations with the court and serve a copy on all parties.  Such a document
27 should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The
28 district judge will review the magistrate judge's findings and recommendations pursuant to 28

U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014), citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:  **July 29, 2025**

STANLEY A. BOONE
United States Magistrate Judge